**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MAHENDRA KUMAR TRIVEDI, <u>et</u> <u>al.</u>,     :
     Plaintiffs     :
          :     **Civil Action No. 4:11-cv-02390**
v.     :
          :     **(Chief Judge Kane)**
TANIA M. SLAWECKI,     :
     Defendant     :

<u>MEMORANDUM</u>

Presently pending before the Court is Plaintiffs' motion for disqualification of

Defendant's counsel.  (Doc. No. 19.)  The motion has been fully briefed and is ripe for

disposition.  For the reasons stated more fully herein, the Court will deny the motion.

I.     **BACKGROUND**

     A.     **Basis of the Litigation**

Plaintiff Mahendra Kumar Trivedi is the founder of the Trivedi Foundation and Trivedi

Master Wellness, which are also named as Plaintiffs in this action.  (Doc. No. 1 ¶ 8.)  The

Trivedi Foundation is a non-profit organization that "works with the scientific community at

major universities and research centers to document the transformational properties of Trivedi's

Energy Transmissions, which impact living organisms and inanimate objects for better

performance."  (<u>Id.</u> ¶ 9.)  Defendant Tania M. Slawecki is a research associate at the Materials

Research Institute and a former assistant professor in the science, technology, and society

program at the Pennsylvania State University.  (<u>Id.</u> ¶ 11.)  From approximately June 2009

through September 2009, Dr. Rustum Roy, a professor at Penn State, and Defendant, who was

then working as a research assistant to Dr. Roy, performed tests on Plaintiff Trivedi's "unique

abilities" to "affect physical materials" at Penn State's materials research laboratory.  (<u>Id.</u> ¶ 12;

Doc. No. 1-2 at 4, 11.)

Plaintiffs allege that Defendant defamed Trivedi and tortiously interfered with their

business relationships.  Specifically, Plaintiffs assert that Defendant posted two publications

online, and sent one email, containing defamatory statements.  In the email, Defendant wrote:

> We now know Trivedi is taking human growth hormone injections
> which is what causes his pituitary to be enlarged, causes him to need
> to drink all that water, increases his virility and makes him irritable
> and nasty.  Thus the data that shows his cartilage is like that of a
> [twenty year old] is true because this is an effect of the [human
> growth hormone injections].  He pretends to be celibate but is driven
> to sex because of taking the [injections].  One [nineteen-year-old] girl
> he sexually abused, he beat her up so badly she wound up in the
> hospital.  Her father pulled her out of the group and they are now
> pressing charges against Trivedi.

(Doc. No. 1 ¶ 19-20; Doc. No. 1-2 at 24.)  According to Plaintiffs, such statements have deterred

third parties from associating or dealing with Plaintiffs and have exposed them "to distrust,

hatred, contempt, ridicule and obloquy."  (Doc. No. 1 ¶¶ 31-32.)

**B.     Facts Relevant to Plaintiffs' Motion for Disqualification**

Defendant is represented by Attorneys Steven F. Lachman and James S. Turner.

Attorney Turner is a founding partner of the firm Swankin & Turner.  (Doc. No. 19 ¶ 1; Doc. No.

23 at 1.)  Attorney Turner avers that he has served as legal counsel to Friends of Health, Inc., a

nonprofit organization founded by the late Dr. Roy, since 2000, and that, in 2009, Dr. Roy asked

him to meet with Plaintiff Trivedi to discuss how Friends of Health, Inc. and the Trivedi

Foundation, then known as the Divine Life Foundation, might work together.  (Doc. No. 23 at 1-

2.)  Later that year, Attorney Turner became a member of the Foundation's board of directors.

(Id.; Doc. No. 19 ¶ 2.)  According to Plaintiffs, Attorney Turner performed legal work for the

Foundation and "gained insight and information concerning the plans for the growth of the

2

Foundation, detail of its operation and information regarding its structure and economic functioning." (Doc. No. 19 ¶¶ 5-6.) Plaintiffs further aver that Attorney Turner was "privy to information relating to research with various [U.S.] universities and research institutes" and "learned directly of the Research performed by Dr. Rustum Roy . . . concerning the impact [of] Trivedi's biofield treatment upon water." (Id. ¶ 6.) In December 2009, Attorney Turner resigned from the Foundation's board of directors and was appointed the chairman of the Foundation's legal committee. (Doc. No. 19-1 at 26; Doc. No. 23 at 2.) Attorney Turner alleges that he has neither had contact with Plaintiff Trivedi nor dealings with the Foundation since December 2009, but he does not identify the date on which he resigned as the chairman of the legal committee. (Doc. No. 23 at 2.)

On May 1, 2012, Marsha Kramarck, the secretary of the Foundation, informed Attorney Turner of his purported conflict of interest in representing Defendant in this action. (Doc. No. 19 ¶ 7; Doc. No. 19-1 at 25.) Attorney Turner responded to Ms. Kramarack on May 4, 2012, refusing to withdraw as Defendant's counsel and denying that he had ever served on the Foundation's board of directors. (Doc. No. 19 ¶ 8; Doc. No. 19-1 at 7.) In response, Ms. Kramarack forwarded several documents to Attorney Turner, including: (1) a September 22, 2009 email requesting his biography and photo for the Foundation's website; (2) a copy of his biography and photo purportedly posted on the website; (3) a September 25, 2009 email authored by Betsy E. Lehrfeld, an attorney at Swankin & Turner, proposing the election of Attorney Turner to the Foundation's board of trustees; (4) a November 19, 2009 email authored by Ms. Lehrfeld, containing "[Attorney Turner's] and my response" to questions regarding changing the name of the Foundation, amending the Foundation's articles of incorporation, and

registering the Foundation as a foreign corporation in California; (5) a December 3, 2009 email

sent to Attorney Turner regarding his "diagram for the business structures;" (6) a December 7,

2009 email sent to Attorney Turner, seeking legal advice regarding the name change of the

Foundation; (7) a December 23, 2009 email written by Attorney Turner, resigning from the

board of directors and stating his intent to become part of the Foundation's advisory counsel; and

(8) a copy of the minutes of a December 22, 2009 meeting of the board of trustees, stating that

the board accepts the resignation of Attorney Turner and acknowledging that he is now part of

the advisory council in the position of chairman of the legal Committee.  (Doc. No. 19-1 at 13-

17, 19, 21-22, 25-26.)

     After receiving these documents, Attorney Turner again refused to withdraw as counsel

for Defendant.  (Doc. No. 19 ¶ 17.)  Accordingly, on May 10, 2012, Plaintiffs filed the instant

motion to disqualify Attorney Turner as Defendant's counsel.  (Doc. No. 19.)

## II.    STANDARD OF REVIEW

     "Federal courts have inherent authority to supervise the conduct of attorneys appearing

before them."  AgSaver LLC v. FMC Corp., No. 11-cv-997, 2011 WL 2274178, at *3 (E.D. Pa.

June 9, 2011).  To guide such supervision, this Court has adopted the Pennsylvania Rules of

Professional Conduct.  See M.D. Pa. L.R. 83.23.2.  Violation of the Pennsylvania Rules of

Professional Conduct, however, does not result in mandatory disqualification.  See, e.g.,

AgSaver LLC, 2011 WL 2274178, at *3.  "Rather, to disqualify opposing counsel, the moving

party must clearly show that continued representation would be impermissible."  Id. (citation and

internal quotation marks omitted). Indeed, "[d]isqualification is a harsh measure and is generally

disfavored by the court."  Id.; see also Bell v. Lackawanna Cnty., No. 08-cv-1926, 2011 WL

2356851, at *1 n.6 (M.D. Pa. June 7, 2011).  But "a court may disqualify an attorney . . . when disqualification is an appropriate means of enforcing the applicable disciplinary rule, keeping in mind any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions."  Mumma v. Bobali Corp., 382 F. App'x 209, 210 (3d Cir. 2010) (citation and internal brackets and quotation marks omitted). "Nonetheless, doubts regarding the existence of an ethical rule violation should be construed in favor of disqualification."  AgSaver LLC, 2011 WL 2274178, at *3.

## III.    DISCUSSION

Plaintiffs assert that since Attorney Turner advised the Foundation on legal matters while acting as a member of the Foundation's board of directors and advisory council, the Court should disqualify him from representing Defendant pursuant to Rule 1.9 of the Pennsylvania Rules of Professional Conduct.  Upon consideration of Rule 1.9, the Court does not agree.

Rule 1.9 provides:

> (a)    A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

> (b)    A lawyer shall not knowingly represent a person in the same or substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

> (1)    whose interests are materially adverse to that person; and

> (2)    about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

unless the former client gives informed consent.

Pa. Rules of Prof'l Conduct R. 1.9(a).  "Disqualification under Rule 1.9(a) is required if (1) the former representation is the same or substantially related to the present matter, (2) the interests of counsel's current client are materially adverse to the interests of the former client, and (3) the former client has not consented."  <u>Jordan v. Phila. Housing Auth.</u>, 337 F. Supp. 2d 666, 672 (E.D. Pa. 2005).  As noted, the moving party "must clearly show that continued representation would be impermissible."  <u>AgSaver LLC</u>, 2011 WL 2274178, at *3.  "Vague and unsupported allegations are insufficient to meet this burden."  <u>Cipressi v. Bristol Borough</u>, No. 10-cv-1584, 2012 WL 606687, at *2 (E.D. Pa. Feb. 27, 2012).

Assuming <u>arguendo</u> that Attorney Turner, while serving on the Foundation's board of directors and advisory council, established an attorney-client relationship with the Foundation, the Court finds that Plaintiffs have failed to clearly demonstrate that Attorney Turner's continued representation of Defendant is impermissible.  Specifically, Plaintiffs have failed to show that Attorney Turner's representation of the Foundation in 2009 is the same or substantially related to the present matter.  To determine whether a substantial relationship exists between the prior representation and the present matter, the Court will first assess the nature and scope of the prior representation, then assess the nature and scope of the present matter, and, finally, determine whether Plaintiffs may have disclosed confidences to Attorney Turner that could be relevant or possibly detrimental in this action.  <u>See AgSaver LLC</u>, 2011 WL 2274178, at *4.

**A.     The Nature and Scope of the Prior Representation**

To assess the nature and scope of the prior representation, "the court should focus upon the reasons for the retention of counsel and the tasks which the attorney was employed to

perform." <u>Commonwealth Ins. Co. v. Graphix Hot Line, Inc.</u>, 808 F. Supp. 1200, 1204 (E.D. Pa.

1992).  The evidence produced by Plaintiffs reflects that Attorney Turner was elected to the

Foundation's board of directors in September 2009 and resigned in December 2009.  (<u>See</u> Doc.

No. 19-1 at 13-17, 25-26.)  Further evidence reveals that Attorney Turner engaged in the

following activities on behalf of the Foundation: (1) submitting a "diagram for the business

structures;" and (2) assisting Attorney Lehrfeld, also of Swankin & Turner, in offering legal

advice regarding changing the name of the Foundation, amending the Foundation's articles of

incorporation, and registering the Foundation as a foreign corporation in California.  Attorney

Turner avers that his "involvement with the Foundation was limited to assisting with the

documentation of corporate actions . . . and general advice as to how the Foundation could make

certain corporate filings on its own."  (Doc. No. 23 at 7.)  Moreover, according to Attorney

Turner, "[a]ny assistance my firm rendered to [the Foundation] was as a courtesy and to advance

the anticipated relationship between Friends of Health and [the] Foundation."  (Doc. No. 23-1 ¶

9.)  Attorney Turner further asserts that he neither entered into a retainer agreement with the

Foundation nor was compensated for his services.  (<u>Id.</u> ¶¶ 11-12.)

     **B.      The Nature and Scope of the Present Matter**

     Next, the Court will assess the nature and scope of the instant litigation.  To do so, the

Court will "evaluate the issues raised in the present litigation and the underlying facts."

<u>Commonwealth Ins. Co.</u>, 808 F. Supp. at 1204.  Plaintiffs' complaint alleges that Defendant

published defamatory statements about Plaintiff Trivedi with the intent to injure Plaintiffs'

reputations and business relationships.  (Doc. No. 1 ¶¶ 24, 26-27, 33; Doc. No. 10 at 6.)  Under

Pennsylvania law, the plaintiff in a defamation action "has the burden of proving, when the issue

is properly raised," the following seven elements:

(1)     The defamatory character of the communication.

(2)     Its publication by the defendant.

(3)     Its application to the plaintiff.

(4)     The understanding by the recipient of its defamatory meaning.

(5)     The understanding by the recipient of it as intended to be applied to the plaintiff.

(6)     Special harm resulting to the plaintiff from its publication.

(7)     Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. § 8343(a).  Under Pennsylvania law, to state a claim for tortious interference with business relations, a plaintiff must plead:

(1)     the existence of a contractual, or prospective contractual relation between the complainant and a third party;

(2)     purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

(3)     the absence of privilege or justification on the part of the defendant; and

(4)     the occasioning of actual legal damage as a result of the defendant's conduct.

Strickland v. Univ. of Scranton, 700 A.2d 979, 985 (Pa. Super. Ct. 1997); see also Crivelli v. Gen. Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000).  These are the only factual and legal inquiries at issue in this action.[1]

---

[1]  In their complaint, Plaintiffs also request the Court to issue an order enjoining Defendant from making any statements regarding Plaintiffs outside the scope of her professional

**C.    The Nature and Scope of the Present Matter Is Not the Same or Substantially Related to the Prior Representation**

Now, the Court must determine whether the Foundation might have disclosed confidences to Attorney Turner, or Swankin & Turner, that could be relevant in the present matter.  Specifically, the Court must decide whether any such confidences could be detrimental to the Foundation in this action.  In making these determinations:

> [T]he court should be guided by the interpretation of the word 'might.'  Courts have defined the word 'might' to mean either when '(a) the lawyer and the client ought to have talked about particular facts during the course of the representation, or (b) the information is of such character that it would not have been unusual for it to have been discussed between lawyer and client during their relationship.'

AgSaver LLC, 2011 WL 2274178, at *4.

Plaintiffs argue that the matters in which Attorney Turner, and Swankin & Turner, previously did work for the Foundation are substantially related to the present matter and prohibit Attorney Turner and Swankin & Turner from further representing Defendant in this action.  Upon review of the record evidence, the Court finds that the present matter is not the same as or substantially related to any matter in which Attorney Turner or Swankin & Turner previously worked on the Foundation's behalf and that disqualification is not required.

Plaintiffs contend that Attorney Turner may "have gained insight information concerning the plans for growth of the Foundation, detail of its operation and information regarding its

---

work measuring the impact of Plaintiff Trivedi's energy transmissions and enjoining her from interfering with Plaintiffs' business relationships.  (Doc. No. 1 at 10.)  The resolution of this request hinges on the Court's resolution of the defamation claim, as courts approving injunctions in defamation cases "have emphasized that there must be a prior adjudication of falsity as a condition precedent to the issuance of an injunction."  Lassiter v. Lassiter, 456 F. Supp. 2d 876, 884 (E.D. Ky. 2006).

structure and economic functioning" – confidences that would be detrimental to the Foundation

in this litigation.  (Doc. No. 22 at 11.)  It follows, they argue, that Attorney Turner might have

obtained confidential information regarding "potential business deals, the non-profit status of the

Foundation, and the research which had been done in the past or was currently being

performed."  (Id. at 9.)  The evidence of record reflects that Attorneys Turner and Lehrfeld

provided legal advice to the Foundation on issues relating to its operating structure and

incorporation.  These matters, however, are not relevant in the present matter, which only

involves inquiries into whether Defendant defamed Plaintiffs and interfered with their business

relationships.  Moreover, the fact that Attorney Turner may have been privy to confidences

regarding the Foundation's research is not relevant, as Plaintiffs have made clear that they "do

not challenge the statements concerning Defendant's research [of Plaintiff Trivedi's purported

abilities] as being defamatory.  Rather, [Plaintiffs] challenge Defendant's . . . accusations that

Trivedi sexually assaulted a young female and was criminally charged as a result thereof."  (Doc.

No. 12 at 7.)  Finally, Plaintiffs have produced no evidence that Attorney Turner would likely

have been privy to confidential information regarding the Foundation's potential business deals.

While Attorney Turner may have obtained general knowledge of the Foundation's dealings and

clientele, as they existed in 2009, Plaintiffs fail to sufficiently explain how such knowledge

would be detrimental to their ability to demonstrate that Defendant's statements, published in

May 2011 and July 2011, were defamatory and interfered with their business relationships.  See

Pa. Rules of Prof'l Conduct 1.9 cmt. 3 ("In the case of an organizational client, general

knowledge of the client's policies and practices ordinarily will not preclude a subsequent

representation . . . ."); AgSaver LLC, 2011 WL 2274178, at *9 (finding that Plaintiff's counsel's

"broad knowledge" of Defendant's "general strategies with respect to its products" and former advisement on pesticide labels "does not translate into knowledge about patent terms and false marking," the legal matters at issue in the present action); <u>Wisdom v. Phila. Housing Auth.</u>, No. 02-cv-8369, 2003 WL 303945, at *1 (E.D. Pa. Feb. 12, 2003) ("[W]hile [Plaintiff's counsel] may have knowledge of [Defendant's] general approach and strategy as to landlord-tenant litigation matters . . . this information would likely be irrelevant to the instant case, as it seemingly involves only factual issues about when [Plaintiff] petitioned [Defendant] for a hearing.")

Plaintiffs further contend that because Defendant has asserted that she published statements about Trivedi in order to "expose [him] and the Trivedi Foundation for their 'lies and deception'" (Doc. No. 10 at 4), it would be impermissible for Attorney Turner to continue representing Defendant in this action (Doc. No. 22 at 12). In their view, this action is substantially related to Attorney Turner's prior representation of the Foundation because Plaintiffs' defamation claim is "tied to the [F]oundation [or] . . . it research," of which Attorney Turner has prior knowledge and developed negative personal opinions. (<u>Id.</u>) The Court does not agree. Attorney Turner's potential general knowledge of the Foundation's practices and research, and the mere fact that he purportedly developed negative personal opinions about Plaintiffs in 2009, has no relevant connection to Defendant's personal motivations in publishing the allegedly defamatory statements at issue in this action.

IV.    **CONCLUSION**

Having concluded that the matters in which Attorney Turner and Swankin & Turner previously provided legal advice to Plaintiffs are not the same or substantially related to the present matter, and considering that disqualification is a harsh measure and generally disfavored,

11

the Court concludes that Plaintiffs have failed to meet their burden in clearly demonstrating that disqualification is required pursuant to Rule 1.9 of the Pennsylvania Rules of Professional Conduct.  Accordingly, the Court will deny Plaintiffs' motion for disqualification of Attorney Turner.  The Court, however, must ensure that no confidential information regarding Plaintiffs would be jeopardized by Attorney Turner's continued representation of Defendant.  Thus, in accordance with Rule 1.9(c), Attorney Turner is prohibited from eliciting testimony about the Foundation's confidential policies or practices, otherwise revealing or relying on confidential information he was privy to by virtue of his prior involvement with the Foundation, or disclosing his prior involvement with the Foundation.  See Pa. Rules of Prof'l Conduct R. 1.9(c) ("A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client . . .;" or "(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.")

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MAHENDRA KUMAR TRIVEDI, <u>et</u> <u>al.</u>,** : | |
|     **Plaintiffs** : | |
| : | **Civil Action No. 4:11-cv-02390** |
| **v.** : | |
| : | **(Chief Judge Kane)** |
| **TANIA M. SLAWECKI,** : | |
|     **Defendant** : | |

<u>**ORDER**</u>

    **AND NOW,** on this 23rd  day of July 2012, **IT IS HEREBY ORDERED THAT**

Defendant's motion for disqualification of Defendant's counsel (Doc. No. 19) is **DENIED**, and

Attorney Turner **SHALL** comply with the directives set forth in the foregoing memorandum in

the course of this action.  **IT IS FURTHER ORDERED THAT** oral argument on Defendant's

motion to dismiss (Doc. No. 6) is **RESCHEDULED** to September 13, 2012, at 1:30 p.m., in

Courtroom No. 4, Federal Building and Courthouse, Harrisburg, Pennsylvania.


                    <u>S/ Yvette Kane</u>
                    Yvette Kane, Chief Judge
                    United States District Court
                    Middle District of Pennsylvania